# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES PRATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-15-123-RAW-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant James Pratt requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on August 6, 1962, and was fifty-one years old at the time of the administrative hearing (Tr. 42). His education includes four or more years of college, but he has no past relevant work (Tr. 29, 335). The claimant alleges he has been unable to work since June 1, 2004, due to carpal tunnel syndrome and bulging discs (Tr. 330).

**Procedural History**

On August 23, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Gene M. Kelly held an administrative hearing and determined the claimant was not disabled in a written decision dated April 19, 2010 (Tr. 143-153). However, the Appeals Council vacated the hearing decision and remanded to an ALJ for resolution of numerous issues regarding the record (Tr. 158-160). On remand, ALJ Bernard Porter held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated October 25, 2013 (Tr. 14-31). The Appeals Council then denied review, so ALJ Porter's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, and push/pull as much as he could lift/carry, except that he could only occasionally use hand controls with the right upper dominant extremity; occasionally handle, finger, and feel with the right dominant extremity; never climb ladders and scaffolds, or crawl; could frequently balance, stoop, and crouch, but only occasionally kneel; he must avoid exposure to unprotected heights, moving mechanical parts, and temperature extremes, and he required a sit/stand option allowing him a change in position at least every 30 minutes. Due to psychologically-based factors, the ALJ further limited the claimant to simple tasks and making simple work-related decisions, found he would be off task up to 5% of the workday, and that he may miss one day per month due to episodic symptomatology. Finally, the ALJ noted that if the claimant could perform light work, he could perform sedentary work (Tr. 20-21). The ALJ concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *i. e.*, furniture rental clerk, call out operator, and election clerk (Tr. 29-30).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess his credibility; (ii) failing to properly assess his RFC, including failing to give sufficient weight to a Medical Source Statement in the record; and (iii) failing to fully develop the record. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of mild degenerative disc disease of the lumbar spine, right carpal tunnel syndrome status post release, right thumb trigger finger post corrective release, hyperlipidemia, obesity, and history of major depressive disorder (single episode, unspecified) (Tr. 17). The relevant medical evidence reveals that the claimant was diagnosed with severe carpal tunnel syndrome of his right wrist and underwent surgery on October 2, 2007 (Tr. 428, 430-431). By October 18, 2007, his doctor had released him to full activities at his tolerance, noting he was both neurovascularly and motor intact with a good grip (Tr. 433). An April 2008 view of the claimant's lumbar spine revealed mild degenerative disc disease affecting the lower two levels, and probable left renal calculus (Tr. 464). Dr. Beau Jennings examined him that same day, noted diminished grip strength of the right hand, limited lumbar range of motion in flexion and extension, but that his gait was normal and straight leg raising tests were negative (Tr. 465). He assessed the claimant with chronic lumbar pain (Tr. 466).

Records from an unidentified clinic reflect that from 2000-2002 the claimant reported some lower lumbar back pain and was prescribed motrin (Tr. 481-487).

The most recent state reviewing physician assessment, from May 24, 2008, determined that the claimant could perform a light RFC, including that he could frequently climb ramps/stairs, balance, kneel, crouch, and crawl, but only occasionally climb ladders/rope/scaffolds and stoop (Tr. 473-474).

On January 4, 2010, Dr. Denise LaGrand, Psy.D., conducted a psychological assessment of the claimant and administered various tests (Tr. 516). Dr. LaGrand noted that there were discrepancies between the claimant's past and current functioning, with no apparent explanation, noting he had a bachelor's degree but that his IQ was well below average; that he did not use his right hand in testing at all because he claimed he could not, but frequently used his right hand to scratch or rub his face, and that "[a]t times, he would realize what he was doing and quickly put his hand back in his lap"; he laid his pencil down after each task even when asked not to, which significantly decreased his performance on timed tasks (Tr. 518-519). Noting the issues with validity, she stated that he tested in the range of borderline intellectual functioning, but that he did not provide a valid assessment and believed he was "exaggerating his impairments physically, psychologically, and intellectually" (Tr. 519-521). She did caution that there was a possibility of some undiagnosed neurological impairment, but that was beyond the scope of her evaluation. (Tr. 521). She diagnosed him with malingering (Tr. 521). She deferred the completion of a Medical Source Statement as to his mental ability to do work-related activities because of his suspected malingering (Tr. 524-526).

At what appears to be an initial evaluation on May 25, 2010, Velvet Medlock, who has a Master of Science in Rehabilitation, and worked for Total Rehabilitation, Inc.,

completed a physical RFC assessment for the claimant (Tr. 527-529). Her treatment notes from that day indicate that the claimant walked with a limp favoring the left lower extremity, but straight leg raising was negative and heel/toe walking was normal, although he continued to have a limited range of motion in the trunk related to forward flexion and extension (Tr. 537). Ms. Medlock's RFC assessment indicated that the claimant could sit for thirty minutes at a time up to four hours per day, stand fifteen minutes at a time up to three hours per day, and walk five minutes at a time up to one hour per eight-hour workday, but that he needed an assistive device to stand and walk, as well as breaks at hourly intervals or less (Tr. 527). She indicated he could only occasionally lift/carry up to five pounds (and up to ten pounds rarely), that use of the left lower extremity was limited in operating foot or leg controls, and that he could occasionally push/pull (Tr. 527-528). She indicated that the claimant could grasp and finger rarely with the right hand, but frequently with the left hand, that he could occasionally climb stairs, and could either rarely or never perform other postural movements, and she indicated he had a number of environmental restrictions (Tr. 528-529). In the area requesting her to described the objective basis for her statements, she indicated, *inter alia*, that she had observed distracted movement patterns, he had an elevated blood pressure reading that may be related to a sympathetic nerve system response to pain, she tested and compared static and dynamic tests and tested across several reps for validity, that he gave good effort when tested for grip in the left hand and that he did not have a functional grip in the right hand (Tr. 529).

At the most recent administrative hearing, the claimant testified that he does not drive due to trouble with his back and arms, that he could not work back in 2000 and 2001 due to pain in his right arm, and that the primary reason he could not work was pain in his lower back and right arm and hand (Tr. 45-48). He later stated that in 2013 he would drive once a week to work as a substitute teacher, which was about twenty miles roundtrip, and he was able to do so because he "had to" (Tr. 63-64). He says that following carpal tunnel surgery he lost the use of his dominant right arm, and that he takes ibuprofen to manage his pain (Tr. 48-49). He testified that he has continuous pain that nothing helps, that he cannot lift anything with his right arm, but can lift up to ten pounds with his left arm, and that he does not do any work around the house, cook, clean, or help with laundry, and that he watches television eight hours a day (Tr. 53-54, 57).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony as well as the medical evidence in the record. At step four, he noted Dr. LaGrand's evaluation and gave it "great weight," because she was able to examine the claimant, interpret the tests administered, and her opinion was based on the examination signs and the test findings (Tr. 26). As to Ms. Medlock's assessment, the ALJ afforded her opinion "diminished weight" because she indicated he needed an assistive device and had a limp related to his left leg but a treating physician after that date found he had a normal gait, x-rays revealed only mild joint space narrowing, the claimant had done no follow-up regarding his alleged complete inability to use his right arm, and even though she indicated he had limitations driving, the claimant had done so in 2012 and 2013 when

working as a substitute teacher (Tr. 26-27). He then concluded that all these inconsistencies rendered her opinion "less probative."

The claimant first contends that the ALJ erred in analyzing his credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 46). Use of boilerplate language is generally disfavored, but this was not the sum total of the ALJ's analysis of the claimants' credibility. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) ("Such conclusory analysis, which neither reveals what "other reasons" or "other factors" prompted the ALJ's conclusions, nor is tethered to specific evidence, constitutes the type of disfavored boilerplate this court rejected in *Hardman* [*v. Barnhart*, 362 F.3d 676, 678-679 (10th Cir. 2004).] But use of such boilerplate is problematic only when it appears '*in the absence of a more thorough analysis*.'") (emphasis added), *quoting Hardman*, 362 F.3d at 679. Elsewhere in the

opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) the only records of claimant's complaints of back pain were in 2002, two years prior to the alleged onset date; (ii) subsequent examinations consistently revealed a normal gait, negative straight leg raising tests, and normal heel/toe walking; (iii) his allegations of severe right arm and wrist pain were inconsistent with the treatment notes following his carpal tunnel surgery; (iv) Dr. LaGrand believed he was malingering as to his right arm limitations; and (v) the claimant's assertion of anxiety was not reflected in the record at all, and was not credible in light of Dr. LaGranding's finding of malingering (Tr. 23-). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*.

The claimant nevertheless appears to argue that the ALJ improperly discounted the claimant's complaints of pain. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993), *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-808 (10th Cir. 1988). But here there is no indication that the ALJ misread the claimant's medical evidence taken as a whole. The ALJ noted several times in relation to the claimant's treatment records that his allegations of pain did not appear to be reflected in the minimal medication management and that there were no reports of severe pain by the claimant. Taken as a whole, the

ALJ's determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment, asks the Court to reweigh the evidence, and specifically challenges the ALJ's findings in relation to Ms. Medlock's physical RFC assessment. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. An ALJ is required to assign controlling weight to the medical opinions of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other

factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

Here, the ALJ's treatment of Ms. Medlock's opinion as a physical therapist, summarized above, meets these standards. The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Ms. Medlock's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2). *See also Andersen v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citation omitted].

Finally, the claimant contends that the ALJ failed to develop the record because he "clearly had physical impairments that were not treated or sufficiently addressed." *See* Docket No. 17, p. 14. He nevertheless fails to point the Court to what these impairments were or how they affected the claimant so as to result in "severely limiting exertional and non-exertional impairments." It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is

developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that []he is disabled under the regulations." *Henrie*, 13 F.3d at 361 [citations omitted]. Here, the claimant has not met this burden.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**